**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WILLIAM T. HIGGINS,**

           **Plaintiff,**

-vs-                                                 **Case No. 6:10-cv-116-Orl-31KRS**

**ISMAEL ESTEVES and SPRINT, INC.,**

           **Defendants.**

_____

# ORDER

This matter comes before the Court on the Motion to Compel Arbitration (Doc. 23) filed by Defendant Ismael Esteves ("Esteves"), the responses (Doc. 24, 31, 33) filed by the Plaintiff, William T. Higgins ("Higgins"), and the reply to those responses (Doc. 47) filed by Esteves.[1]

## I.    Background

In his complaint (Doc. 2), Higgins, who is proceeding *pro se*, contends that the defendants imposed unauthorized charges on his telephone bill in violation of 47 U.S.C. § 201(b). Esteves contends that Higgins, as a Sprint subscriber since 2004, entered into four agreements in regard to his phone services, all of which contained mandatory arbitration provisions. (Doc. 23 at 1-2). On February 17, 2010, the Court ordered Esteves to file what he contended was the operative

---

[1]Esteves is the only defendant to make an appearance in this case. In the notice of removal, Esteves contends that, although "Sprint, Inc." is named as a defendant, there is no such entity and, even if there were, he is not empowered to accept service of process on its behalf. Esteves asserts that Higgins was, indeed, a customer of "Sprint" (Doc. 23 at 1), but Esteves does not provide the proper name of the entity with which Higgins did business. In the instant motion, Esteves describes himself as a store manager. (Doc. 23 at 2 n.1).

subscriber agreement. (Doc. 25 at 1). He did so on February 25, 2010, filing a document titled "January 1, 2008 Terms and Conditions" (henceforth, the "2008 Terms"). (Doc. 36). Esteves has also filed a copy of a document (Doc. 28-1 at 39), dated March 15, 2010 and purportedly signed by Higgins, in which he agreed to be bound by the 2008 Terms. By way of the instant motion, Esteves seeks to enforce the arbitration provisions found in the 2008 Terms. Higgins objects on numerous grounds, as set forth below.

## II.     Legal Standard

Federal policy favors arbitration over litigation, and requires that arbitration clauses be construed broadly and that all doubts be resolved in favor of arbitration. *Seaboard Coast Line R. R. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir.1982); see *also Nicor Int'l Corp. v. El Paso Corp.*, 292 F.Supp.2d 1357, 1371 (S.D.Fla.2003) (noting strong federal policy in favor of enforcing arbitration agreements). The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides, in relevant part, as follows:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA further provides that a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court for an order directing that such arbitration proceed in the manner provided for in the agreement. 9 U.S.C. § 4. Absent some violation of public policy, a federal court must refer

to arbitration any controversies covered by the provisions of an arbitration clause. *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001).

A federal court must undertake a two-step inquiry when considering a motion to compel arbitration. Its first task is to determine whether the parties agreed to arbitrate the dispute, a determination made by reference to the federal law of arbitrability, applicable to any arbitration agreement within the coverage of the FAA. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hospital*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 941-42, 74 L.Ed.2d 765 (1983). If the Court finds that the parties agreed to arbitrate the claims, its second task is to determine "whether legal constraints external to the parties agreement foreclosed the arbitration of those claims." *Mitsubishi Motors Corp.*, 474 U.S. at 628, 105 S.Ct. at 3355. It is well established that one may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract. *McBro Planning and Development Co. v. Triangle Elec. Const. Co., Inc.*, 741 F.2d 342, 344 (11th Cir. 1984).

## III. Analysis

Higgins raises numerous objections to the motion to arbitrate. His first is that the entity designated in the 2008 Terms to administer the arbitration, the National Arbitration Forum ("NAF"), is biased against consumers to the point that it has been "banned from hearing any more cases in Minnesota." (Doc. 24 at 1). In support of this allegation, Higgins attaches a 2009 story from a publication titled *Minnesota Lawyer*, describing how the Minnesota-based NAF had been sued by the state's attorney general for failing to reveal "the closeness of its relationship with

credit card companies," and in response had agreed to stop arbitrating credit-card disputes. (Doc. 24-1 at 1). The story notes that NAF did not admit to any wrongdoing as part of the consent agreement, and does not state that, as Higgins alleges, the NAF has been banned entirely from overseeing arbitrations in Minnesota. (Doc. 24-1 at 1). Though certainly a black eye for the NAF, this story, even assuming it is admissible as evidence in the instant proceeding, is not enough to raise a serious concern that the arbitration of this non-credit-card matter will be biased against Higgins. The other information Higgins provides in support of this allegation – a law firm advertisement soliciting individuals to join a class action lawsuit against the NAF and a number of credit card companies due to their purported misbehavior (Doc. 24-2) – is even less persuasive than the *Minnesota Lawyer* story.[2]

The 2008 Agreement provides that unless the parties agree otherwise, "the Arbitration will be conducted by a single neutral arbitrator." As the Supreme Court said in *Mitsubishi*, the Court declines "to indulge in the presumption that the parties and the arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Mitsubishi Motors Corp.*, 473 U.S. at 634. Once the arbitration has been conducted, if Higgins believes that the supposedly neutral arbitrator was biased against him, he retains the ability to challenge the result under 9 U.S.C. § 10.

The rest of Higgins's contentions do not warrant extended discussion. Higgins contends that the Magnuson-Moss Act bars arbitration of his claims, and notes that the United States Court

---

[2]Higgins also provides a story (Doc. 31) describing how an organization called the "National Arbitration Council" had been found to be a scam, but there is nothing to show that there is any link between that organization and the NAF.

of Appeals for the Eleventh Circuit refused to compel arbitration of a Title VII claim in *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998). But Higgins has not raised a Magnuson-Moss Act claim or a Title VII claim here. He contends that the arbitration clauses at issue are unconscionable, because the law forbids arbitration of his claim and because the costs of arbitration are excessive. However, as noted above, Higgins has not shown that any law precludes arbitration of the claims he has raised in this case. Further, he has not made any showing as to how much an arbitration before the NAF might cost – much less a showing that it would cost significantly more than the alternative he seeks: *i.e.*, litigating his claims in federal court.[3] *See Anders v. Hometown Mortg. Services, Inc.*, 346 F.3d 1024, 1028 (11thCir. 2003) (holding that where a party seeks to invalidate an arbitration agreement on grounds that it would be prohibitively expensive, that party bears burden of showing the likelihood of incurring such costs). He argues that he never agreed to arbitrate, but offers no explanation for the agreement bearing his signature and informing him of his obligation to arbitrate disputes. (Doc. 28-1 at 39). Finally, Higgins argues that an arbitrator could not award the noneconomic and punitive damages that he is seeking in his complaint, thereby making the arbitration clauses unenforceable. But Esteves denies that such a restriction exists, and Higgins provides nothing in support of this assertion.

## IV. Conclusion

In consideration of the foregoing, it is hereby

---

[3] In addition, the 2008 Agreement provides that, while the parties are responsible for their own costs of counsel, experts, and witnesses, Sprint agrees to pay arbitration administrative or filing fees for the consumer that exceed "the equivalent court filing fees for a court action in the appropriate jurisdiction." (Doc. 36 at 26).

**ORDERED** that the Motion to Compel Arbitration (Doc. 23) is **GRANTED**, and this case is **STAYED** pending arbitration of Higgins's claims. All pending motions are **DENIED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 7, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party